UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES FRANK LOWERY,

    Petitioner,

    v.

DARREN SWENSEN,

    Respondent.

Case No.C06-5112 RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: JULY 14, 2006**

This matter has been assigned to United States Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Dkt. # 4). Respondent has answered. (Dkt. # 10). This matter is now ripe for review.

### I. <u>FACTUAL BACKGROUND</u>

Petitioner is in custody pursuant to his 2002 Lewis County convictions by guilty plea for first degree burglary, first degree theft, theft of a firearm, and trafficking in stolen property. The Washington Court of Appeals summarized the facts surrounding petitioner's convictions as follows:

> On April 16, 2002, Charles Frank Lowery pleaded guilty to first degree burglary, Count I; first degree trafficking in stolen property, Count II; first degree trafficking in stolen property, Count III; first degree theft, Count IV; and theft of a firearm, Count V. Under an agreement between the Lewis County Prosecutor's

REPORT AND RECOMMENDATION - 1

office and Lowery, also dated April 16, 2002, Lowery agreed to plead guilty to all five of the charges filed against him before taking a polygraph test administered by the State. If Lowery passed the post-plea polygraph, however, the State would allow him to withdraw his guilty pleas and it would amend the charges to dismiss the firearm enhancement, the firearm theft charge, and reduce Count I to residential burglary. Lowery did not pass the polygraph test, but he moved to withdraw his guilty pleas to Counts I and V anyway, claiming that his trial counsel was ineffective for advising him to enter the plea agreement.

Here, Lowery appeals the denial of his motion to withdraw his Alford [footnote 1 omitted] pleas to one count of first degree burglary with a firearm enhancement (Count I) and one count of firearm theft (Count V). [footnote 2. Lowery also pleaded guilty to two counts of first degree trafficking in stolen property and one count of first degree theft but he does not challenge those pleas.] We affirm.

Facts

On March 29, 2002, the State charged Lowery with (1) one count of first degree burglary with a firearm enhancement (Count I); (2) two counts of first degree trafficking in stolen property (Counts II and III); (3) one count of first degree theft (Count IV); and (4) one count of theft of a firearm (Count V). Lowery admitted that he had committed the burglary and was willing to plead guilty to Counts II, III, and IV. But he denied that he stole a firearm and initially refused to plead guilty to Counts I and V. Trial counsel reviewed the State's evidence and advised Lowery that he would likely be convicted on the firearm and burglary charges despite his denial.

On April 16, 2002, Lowery, with the assistance of his trial counsel, entered into a plea agreement with the Lewis County Prosecuting Attorney's office. The agreement provided:

Charles Lowery hereby promises to:

(1) Plead guilty as charged to the original information . . .

(2) Submit to and successfully pass a polygraph examination administered at State expense by a State selected polygrapher. The polygraph shall address the question of whether or not Mr. Lowery was armed with a firearm at any time during the burglary in this case (including whether or not he stole a firearm from the residence he burglarized). Furthermore, the defendant hereby stipulates to the admissibility of the polygrapher's report, and waives any objection to such report at any sentencing hearing, or at any other hearing. The defendant's attorney . . . will be informed in advance of the date, time and location of the polygraph examination, and may be present for the pre-test interview.

If Mr. Lowery passes the polygraph by asserting that he was not armed with a firearm at any time during the burglary in this case (including the immediate flight therefrom) and that he did not steal a

REPORT AND RECOMMENDATION - 2

    firearm from the residence in this case, then the Prosecutor's Office agrees:
(1)    that the defendant shall be allowed to withdraw his guilty pleas to Counts I through V of the original information;
(2)    that the defendant shall enter pleas of guilty to an amended information charging Count I Residential Burglary (with no Firearm Enhancement); Counts II & III Trafficking in Stolen Property in the First Degree; and Count IV Theft in the First Degree; and
(3)    that the State will recommend at sentencing that Mr. Lowery be sentenced within the standard range on all counts, with {legal financial obligations} as follows: $110 court costs, $500 {victim assessment}, $1000 fine/jail fee recoupment, restitution {to be determined}, no contact with the victims.
    If Mr. Lowery violates the agreement by failing the polygraph, by refusing to take the polygraph, or by passing the polygraph and revealing that there was a firearm involved, then the State is free to recommend any sentence authorized by law.

Clerk's Papers (CP) at 62-63.

    Defense Counsel and a deputy prosecuting attorney signed the agreement. Below their signatures, Lowery signed as follows:

I, Charles Lowery, understand that any failure to perform any of my above-mentioned promises or obligations truthfully and honestly relieves the Lewis County Prosecutor's Office from any performance arising from this agreement, and the prosecution retains the right to prosecute me to the full, maximum extent allowed by law, and may recommend any lawful sentence at the time of sentencing.
    Furthermore, if I violate the terms of this agreement and thereby lose the benefit of the State's recommendation outlined above, I may not withdraw my plea of guilty.
    I hereby freely and voluntarily enter into this agreement. I have not been threatened or coerced into pleading guilty in any way.
. . .

_____
[Signature]

CP at 63.

    The same day, Lowery signed the plea agreement, April 16, 2002, he pleaded guilty to all five counts as charged. Lowery entered an Alford plea to Counts I and V, reiterating his claim that no firearm was involved. At the plea hearing, the court asked Lowery about his understanding of the plea agreement, the charges against him, the rights he would yield under the agreement, and whether he was entering the agreement voluntarily. Finding that Lowery's guilty plea was "knowingly, intelligently and voluntarily made," the trial court accepted all five of Lowery's pleas. CP at 61. The court also found that Lowery's Statement of Defendant on Plea of Guilty provided a factual basis for Counts II, III, and IV, and that the prosecutor's

REPORT AND RECOMMENDATION - 3

oral offer of proof at the plea hearing substantiated Counts I and IV.

On May 9, 2002, Lowery signed a polygraph waiver and took the State's polygraph test. The State's polygraph examiner determined that Lowery "answer[ed] deceptively" (CP at 27) to the questions, "Did you steal that gun from 469 Coulson Rd? No." CP at 27. On May 31, 2002, Lowery took a second polygraph test at his own expense that was inconclusive.

On June 5, 2002, the trial court sentenced Lowery to concurrent standard range sentences for all five counts.

Lowery's attorney arranged for him to take a third polygraph test. On September 9, 2002, Lowery passed this test. On September 20, 2002, Lowery's new counsel moved to withdraw his guilty plea claiming that trial counsel's assistance was ineffective. During the hearing on the motion to withdraw, trial counsel testified that he had never entered into this type of plea agreement before, but that this type of agreement is "typical" in Lewis County. Trial counsel also testified that (1) his failure to adequately investigate the scientific literature regarding the reliability of polygraph examinations constituted conduct falling below the reasonable standard of care owed by a defense counsel; and (2) that had he known about the unreliability of polygraph examinations, he would not have advised Lowery to enter into this plea agreement. The trial court found that although allowing Lowery to take the polygraph test without a reasonable scientific investigation may have been "inappropriate," there was no evidence that Lowery's polygraph examination was either reliable or unreliable. Furthermore, the court noted that trial counsel had advised Lowery "of the potential for the polygraph not to be accurate." Report of Proceedings (RP) (November 18, 2002) at 86. The trial court found that trial counsel's representation was not ineffective and denied Lowery's withdrawal motion. Lowery appeals.

(Dkt. # 10, Exh. 4).

## II. PROCEDURAL HISTORY

The superior court sentenced petitioner on June 5, 2002. (Dkt. # 10, Exh. 1, 5, 6).

Petitioner did not appeal from the judgment and sentence. On September 20, 2002, petitioner filed a motion in the superior court seeking to withdraw his guilty plea. (Id. at Exh. 7). The superior court denied the motion. (Id. at Exh. 8). Petitioner appealed from the superior court's order to the Washington Court of Appeals. (Id. at Exh. 10-12). The Washington Court of Appeals affirmed. (Id. at Exh. 4). Petitioner then sought review by the Washington Supreme Court and presented the following issues:

1. Did the trial court err in denying Petitioner Lowery's motion to withdraw his guilty pleas pursuant to Criminal Rule 7.8, where the Petitioner's former trial counsel

REPORT AND RECOMMENDATION - 4

suggested to the state that he plead guilty to the five offenses, and take a polygraph evaluation, and if successful, dismiss the charge and reduce first-degree burglary to residential burglary, where counsel acknowledged that he did not investigate the validity of polygraph examinations?

2.   Did the Petitioner receive effective assistance of counsel where his former attorney suggested that he plead guilty to all five counts then take a polygraph examination and if he passed, Count I and Count V would be dismissed where the Petitioner failed the polygraph, where the former counsel did not investigate the use of polygraphs, where polygraph examinations are not generally admissible in Washington courts, and where counsel did not interview the alleged victim and obtain any information regarding the existence of the alleged shotgun?

3.   Did counsel's performance fall below an objective standard of reasonable effectiveness where counsel permitted his client to plead to all five counts upon a stipulation, drafted by the Petitioner's counsel, that if he passed the polygraph examination, Count I would be withdrawn and substituted for residential burglary and Count V, theft of a firearm, would be dismissed, where his former counsel acknowledged that he did little trial preparation, permitted the polygrapher to be selected by the state, did not have the Petitioner have a polygraph prior to accepting the state's offer, did no investigation of the reliability of polygraph examinations, and where counsel acknowledged that his representation of the petitioner was ineffective?

4.   Did the performance of the Petitioner's former counsel prejudice the Petitioner, where counsel stated that had he known about the lack of reliability of polygraph and the varying results obtained by different polygraphers, he would not have advised Lowery to plead guilty?

5.   Was counsel's performance prejudicial *per se*, where counsel advised the Petitioner to enter guilty pleas to five counts, with the understanding that he would be permitted to withdraw his pleas to two counts if he passed a polygraph test, where counsel told the court that his representation was deficient?

6.   Did Division II of the Court of Appeals err in denying Lowery's motion to withdraw his pleas?

(Id. at Exh. 13, 1-3).

The Washington Supreme Court denied review on March 29, 2005.  (Id. at Exh. 14).  The Washington Court of Appeals issued its mandate on April 4, 2005.  (Id. at Exh. 15).

Petitioner filed a second motion to withdraw his guilty plea in the superior court on October 4, 2004. (Id. at Exh. 16).  The superior court transferred the motion to the Washington Court of Appeals for consideration as a personal restraint petition. (Id. at Exh. 17-19).  The petition was dismissed. (Id. at Exh. 20).  Petitioner then sought review by the Washington Supreme Court, and

REPORT AND RECOMMENDATION - 5

presented the following issues:

    1.    Whether [the] Court of Appeals erred [by] claiming Motion and/or Petition was untimely filed pursuant to RCW 10.73.090(3)(a), when motion to withdraw guilty plea was filed Oct. 4, 2004, and mandate disposing of direct appeal did not issue until April 4, 2005? RCW 10.73.090(1); (3)(b); 28 U.S.C. § 2244(d)(2); Saffold v. Newland, 224 F.3d 1087 (9th Cir. 2000) RAP 13.5(b)(1)(2).

    2.    Whether [the] Appeals Court erred [by] denying Petitioner's claim that he was deprived of his 6th and 14th Amendment Rights to the U.S. Constitution under U.S. Blakely when no evidence was admitted Petitioner used a weapon; the jury made no finding of a weapon; and the court imposed a weapon enhancement; the intervening change in the law states Blakely rule applies in this case for judicial fact finding which also violate "The Real Facts Doctrine"? Blakely v. Washington, 124 S. Ct. 2531; U.S. v. Ameline, 376 F.3d 967 (9th Cir. 2004); RAP 13.5(b)(1)(2).

(Id. at Exh. 21).

The Washington Supreme Court denied review on October 6, 2005. (Id. at Exh. 22). The Washington Court of Appeals issued a certificate of finality on December 13, 2005. (Id. at Exh. 23).

### III. ISSUES

Petitioner presents this court with the following grounds for habeas corpus relief:

1. Petitioner received ineffective assistance of counsel constituting a manifest injustice.

2. There was insufficient evidence to support convictions of theft of, and use of a firearm.

3. The trial court shifted the burden of proof to the defendant, thereby violating his due process right.

4. The trial court violated Petitioner's Sixth Amendment right to a jury trial as explained in Blakely v. Washington.

### IV. EVIDENTIARY HEARING

Petitioner is not entitled to an evidentiary hearing. (*See* Dkt. # 18).

### V. STANDARD OF REVIEW

REPORT AND RECOMMENDATION - 6

State court judgments carry a presumption of finality and legality. McKenzie v. McCormick, 27 F.3d 1415, 1418 (9th Cir. 1994), cert. denied, 513 U.S. 1118 (1995). Habeas relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991). The petitioner must prove the custody violates the Constitution, laws or treaties of the United States. McKenzie, 27 F.3d at 1418-19. If a petitioner establishes a constitutional trial error, the court must determine if the error caused actual and substantial prejudice. Brecht v. Abrahamson, 507 U.S. 619, 637-39 (1993). A state court's interpretation of state law is binding upon the federal courts. Oxborrow v. Eikenberry, 877 F.2d 1395 (9th Cir.), cert. denied, 493 U.S. 942 (1989).

## VI. DISCUSSION

### A. Ineffective Assistance of Counsel Claim

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Strickland v. Washington, 466 U.S. 668, 686 (1984) (right to counsel is right to effective assistance of counsel). When ineffective assistance of counsel is claimed, the standard to be used is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Counsel's representation must have been "so defective as to require reversal of a conviction." Id. at 687. To prevail on such a claim, the defendant must show that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." Id. Thus, unless both of these showings are made, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

There also is a "strong presumption" that the performance of counsel "falls within the 'wide

REPORT AND RECOMMENDATION - 7

range of professional assistance.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986). With respect to attorney performance, the proper standard to be used "is that of reasonably effective assistance" under "prevailing professional norms." <u>Strickland</u>, 466 U.S. at 687-88. Therefore, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688; <u>United States v. Vincent</u>, 758 F.2d 379, 381 (9th Cir. 1985) (defendant must show counsel's errors reflect failure to exercise skill, judgment or diligence of reasonably competent attorney).

Counsel, furthermore, has "wide latitude in deciding how best to represent a client" and "making tactical decisions." <u>Yarborough</u>, 540 U.S. at 5; <u>Strickland</u>, 466 U.S. at 689. The competence of counsel "is presumed," and thus "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." <u>Kimmelman</u>, 477 U.S. at 381, 384. Not surprisingly, therefore, "the standard of review is highly deferential." <u>Id.</u> at 381. As the Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland</u>, 466 U.S. at 689 (citations omitted).

As noted above, to prevail on an ineffective assistance of counsel claim, the defendant also must "affirmatively prove prejudice." <u>Id.</u> at 693. In other words, it is not enough to show that "particular errors of counsel were unreasonable," and that they had "some conceivable effect on the outcome" of the trial. <u>Id.</u> Rather, it must be shown that "there is a reasonable probability that, but

REPORT AND RECOMMENDATION - 8

for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome." Id. When determining whether prejudice exists, the court "'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at 381 (citing Strickland, 466 U.S. at 695).

In the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1996). This test does not focus on the defendant's subjective contention that he would have insisted on going to trial. Rather, the test employs an objective standard. Hill, 474 U.S. at 59-60; Sanchez v. United States, 50 F.3d 1448, 1454 (9th Cir. 1995).

The Washington Court of Appeals reasonably rejected Lowery's claim of ineffective assistance of counsel because Lowery could not show both deficient representation and prejudice. The court held:

> To demonstrate ineffective assistance of counsel, Lowery must show that counsel's performance was deficient and that he was prejudiced by it. *State v. S.M..*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000). Here Lowery claims that his counsel was ineffective by failing to research and advise him of the shortfalls regarding polygraph accuracy and that therefore his counsel allowed him to risk receiving a higher sentence through his plea agreement.
>
> But the record does not show that Lowery would have received a lesser sentence had he gone to trial. And Lowery entered the plea agreement voluntarily and with a knowledge of the risks. Trial counsel evaluated the strength of the State's case and advised Lowery that there was a strong chance that he would be convicted if he went to a jury trial. The record also shows that Lowery's counsel made no guarantees regarding the accuracy of polygraph tests and warned Lowery that polygraph tests can yield unexpected results before Lowery entered into the plea agreement. It was not ineffective for Lowery's counsel to advise him to risk taking a State polygraph test that could lead to the dismissal of two of the more serious charges against him and avoid the perceived greater risk that the jury would not believe Lowery's inconsistent pleas. The trial court did not abuse its discretion by rejecting Lowery's ineffective assistance of counsel claim and denying Lowery's motion to withdraw his

REPORT AND RECOMMENDATION - 9

guilty plea to Counts I and V.

(Dkt. # 10 at Exh. 4, at 6-7).

The state court concluded that petitioner failed to rebut the presumption of competent representation and that petitioner failed to show prejudice.

Prior to his plea, petitioner completed the Statement of Defendant on Plea of Guilty, in which he was informed of his rights, the charges, and direct consequences of his plea.  (Id. at Exh. 2). Petitioner admitted that he understood the statement, the plea, and the plea agreement, that he had fully discussed the matter with his counsel, and that he was voluntarily entering the plea to take advantage of the plea agreement. (Id., Exh. 2 at 6).  At the change of plea hearing, the judge engaged in a colloquy with petitioner to ensure he was knowingly, intelligently and voluntarily entering the plea. (Id. at Exh. 3).  The judge ensured petitioner understood the charges, and the consequences of his plea. (Id., Exh. 3 at 2-5).  The judge ensured petitioner understood his rights and that petitioner waived the rights by pleading guilty. (Id., Exh. 3 at 5-6).  Petitioner's plea was voluntary and not the result of any threats. (Id., Exh. 3 at 8).  Petitioner was entering the plea to take advantage of the plea agreement, and he admitted he fully understood the plea. (Id., Exh. 3 at 11-12).  The judge found the plea to be knowing, intelligent and voluntary. Id., Exh. 3 at 12-13).

In hearing on petitioner's post-conviction motion to withdraw his guilty plea, counsel testified about his representation of petitioner.  (Id. at Exh. 9).  During his discussions with petitioner, counsel explained that polygraphs are not admissible during trial, that "[p]olygraphs don't always turn out the way you expect. . . ."  (Id., Exh. 9 at 8).  Counsel explained to petitioner in detail the charges and consequences of the plea.  (Id., Exh. 9 at 25).  Counsel believed petitioner knew "full well exactly what he was pleading guilty to" and the consequences of the plea.  (Id., Exh. 9 at 26).  Counsel had investigated the case.  (Id., Exh. 9 at 27).  Counsel was hesitant about going to

REPORT AND RECOMMENDATION - 10

trial because petitioner had a prior conviction for burglary and petitioner had made a statement to the police initially denying any involvement in the current charge. (Id., Exh. 9 at 24, 27 and 34-35). Counsel believed the jury would not accept petitioner's story that he broke into the house and stole items, but did not steal the firearm. (Id., Exh. 9, at 34-35). Counsel explained the direct consequences of failing the polygraph test to petitioner, and counsel advised petitioner that there was a strong chance he would be convicted if he went to trial. (Id., Exh. 9, at 36-37).

Petitioner also testified during the post-conviction hearing. Petitioner admitted he had understood the consequences of the plea, including the consequences if he failed the polygraph examination. (Id., Exh. 9, at 59). Petitioner admitted he had discussed the case with counsel, including discussing his initial false statements to the police and his subsequent confession to the burglary. (Id., Exh. 9, at 59-61). Petitioner admitted he agreed it would be in his best interest to accept a plea deal rather than going to trial. (Id., Exh. 9, at 62). Petitioner admitted he had heard about the unreliability of polygraph examinations, and that he clearly understood his options at the time of the plea. (Id. at Exh. 9, at 63-64). At the conclusion of the hearing, the judge found counsel had informed petitioner that polygraph examinations are not always accurate, that petitioner did not show deficient representation, and that petitioner did not show prejudice. (Id., Exh. 9, at 76-87).

This court finds that the state court adjudication was a reasonable application of federal law, and that, consequently, petitioner is not entitled to relief.

B. <u>Insufficiency of Evidence of Burden of Proof Claims</u>

The court reviews petitioner's second and third claims together as they falter on the same ground. Both were waived when petitioner plead guilty.

A guilty plea is more than "an admission of past conduct; it is the defendant's consent that

REPORT AND RECOMMENDATION - 11

judgment of conviction may be entered without a trial". United States v. Broce, 488 U.S. 563, 569-72 (1989); Brady v. United States, 397 U.S. 742, 748 and 756-57 (1970). The guilty plea waives any claim based upon a pre-plea, non-jurisdictional error. Tollett v. Henderson, 411 U.S. 258, 267 (1973); Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir.), cert. denied, 506 U.S. 878 (1992); see also Moran v. Godinez, 40 F.3d 1567, 1577 (9th Cir. 1994); United States v. Cortez, 973 F.2d 764, 767 (9th Cir. 1992). By pleading guilty, the petitioner waived his challenges based upon sufficiency of the evidence and burden of proof. Therefore, these claims are not cognizable in federal court.

      C.      Petitioner's Sixth Amendment Right to Jury Trial and Blakely

Petitioner alleges that his sentence violates the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). Petitioner's sentence became final on June 5, 2002, upon entry of the judgment and sentence. (Dkt. # 10, Exh. 1). Retroactive application of the Blakely rule to petitioner's sentence is barred under both 28 U.S.C. § 2254(d) and Teague v. Lane, 489 U.S. 288 (1989). Because the judgment and sentence became final several years before Blakely was decided, Blakely does not apply. Schardt v. Payne, 414 F.3d 1025, 1033-38 (9th Cir. 2005).

Even if Blakely did apply, petitioner admitted the facts underlying the sentencing enhancement in his guilty plea. The Washington Supreme Court held:

> In Blakely, the Supreme Court held that Washington exceptional sentences may not be imposed unless the supporting facts are admitted by the defendant or found by a jury beyond a reasonable doubt. Blakely, 124 S. Ct. at 2536. Blakely applies to weapon enhancements. State v. Recuenco, 154 Wn.2d 156, 162-63, 110 P.3d 188 (2005). But the principle underlying Blakely is that the trial court may impose no greater sentence than that allowed by facts reflected in the verdict alone or admitted by the defendant. Blakely, 124 S. Ct. at 2546. Mr. Lowery pleaded guilty to first degree burglary while armed with a firearm, and in doing so he expressly waived his right to a jury trial. See State v. Hughes, 154 Wn.2d 118, 133, 110 P.3d 192 (2005) (rights under Blakely may be waived). The trial court therefore properly entered a judgment of guilt on the charge of first degree burglary while armed with a firearm, and that judgment alone permitted the court to impose a firearm enhancement. The enhancement thus does not violate Blakely, even assuming, without deciding, that

REPORT AND RECOMMENDATION - 12

Blakely may be applied to this case. Id. at Exh. 22, at 1-2.

The state court decision was not contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on claim four because Blakely does not apply to his sentence and retroactive application is barred.

## CONCLUSION

Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH PREJUDICE.** A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **July 14, 2006** as noted in the caption.

DATED this 21st day of June, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13